UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Norfolk Division

LORA COCHRAN,

        Plaintiff,

v.                                              Civil Action No. 4:16-cv-11

CAROLYN W. COLVIN,
Acting Commissioner of the
Social Security Administration,

        Defendant.

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

Plaintiff Lora Cochran ("Cochran") seeks judicial review of a decision by the Commissioner of the Social Security Administration ("Commissioner") denying her claim for Disability Insurance Benefits ("DIB") under Title II of the Social Security Act. Specifically, Cochran claims that the Administrative Law Judge ("ALJ") should have found her to be disabled because she obtained an "Individual Unemployability" determination by the Department of Veterans Affairs ("VA") and the ALJ gave "substantial weight" to the VA's disability rating pursuant to Bird v. Commissioner of Social Security, 699 F.3d 337 (4th Cir. 2012). This action was referred to the undersigned United States Magistrate Judge pursuant to provisions of 28 U.S.C. § 636(b)(1)(B) and (C), and Rule 72(b) of the Federal Rules of Civil Procedure. Because the ALJ's decision complied with Bird and was supported by the evidence, this Report recommends that the district court GRANT the Commissioner's Motion for Summary Judgment (ECF No. 10) and affirm the Commissioner's decision.

1

## I.  PROCEDURAL BACKRGOUND

Cochran, a military veteran, applied for DIB on July 2, 2014, alleging a disability onset date of February 16, 2006. (R. 140). Her alleged disabilities include anxiety disorder, panic attacks, depression, post-traumatic stress disorder ("PTSD"), and military sexual trauma ("MST"). (R. 166). Cochran's Date Last Insured ("DLI") was June 30, 2011.[1] The Virginia state agency denied Cochran's disability claims at the initial and reconsideration levels of administrative review. (R. 71, 79).

Cochran requested an administrative hearing in front of an ALJ on February 3, 2015. (R. 18). That hearing was held on May 5, 2015, and the ALJ issued a decision on August 21, 2015, finding that Cochran was not disabled through her DLI. (R. 18-27). Cochran then filed a request for review of the ALJ's decision, and on December 28, 2015, the Appeals Council denied her request. (R. 1-4). Following the Appeals Council's denial of review, the ALJ's decision became the final decision of the Commissioner for purposes of judicial review. See 20 C.F.R. § 404.981. Cochran filed this suit on March 1, 2016, seeking judicial review of the Commissioner's decision. (ECF No. 1).

## II.  FACTUAL BACKGROUND

Cochran is thirty-eight years old and alleges that she has been disabled since she left military service in 2006, when she was twenty-seven. See (R. 140). She entered the U.S. Army on April 24, 2002, and worked as a healthcare specialist (i.e., medic). (R. 36, 134). Cochran testified that she received an honorable discharge in February 2006 because she was pregnant. (R. 37). After leaving the military, she returned to college and graduated from East Carolina University in 2010 with a Bachelor of Science degree in Health Services Management. (R. 214).

---

[1] To qualify for DIB, a claimant must prove disability prior to his or her DLI. 20 C.F.R. § 404.131(a); Johnson v. Barnhart, 434 F.3d 650, 655-56 (4th Cir. 2005).

While in school, she achieved above-average grades and received academic honors. See (R. 214-15). Cochran is married and has three children, ages eleven, nine, and six. See (R. 38).

A.    **Cochran's Medical and Treatment History**

Prior to her alleged onset date, Cochran was frequently treated for mild exercise-induced asthma, bronchitis, upper respiratory infections, sinusitis, and allergic rhinitis. (R. 769, 772, 774, 791, 856, 902, 935, 951). In 2004, while in the military, she began receiving treatment for anxiety and alcohol abuse, including a four-day admission for suicidal ideation. (R. 877, 882-884). In August 2005, her treating physician noted ongoing problems with generalized anxiety disorder, major depression (recurrent, mild), and panic disorder without agoraphobia. (R. 832). In September 2005, she was diagnosed by a psychologist with generalized anxiety disorder and major depression. (R. 925). She was diagnosed with panic disorder without agoraphobia during her military services physical separation/termination examination in October 2005. (R. 923).

On October 13, 2006, following her separation from the U.S. Army and the alleged onset of her disabilities, Cochran sought treatment at the Durham VA Mental Health Clinic ("VAMHC"), reporting that her depression and anxiety had become worse. (R. 320). Dr. Teresa Purdy diagnosed Cochran with major depressive disorder and rated her GAF score at 60.[2] (R. 322). On February 16, 2007, Cochran returned to the VAMHC with complaints of depression and anxiety. (R. 472). Psychiatrist Richard Weiner diagnosed her again with depression and

---

[2] Clinicians use the GAF scale, devised by the American Psychiatric Association and ranging from zero to one hundred, to indicate an overall judgment of a person's psychological, social, and occupational functioning. Diagnostic and Statistical Manual of Mental Disorders (DSM-IV-TR) 34 (4th ed. 2000). A GAF of 71-80 indicates that "if symptoms are present, they are transient and expectable reactions to psycho-social stressors;" a GAF of 61-70 indicates that the individual has "some mild symptoms;" a GAF of 51-60 indicates that the individual has "moderate symptoms;" and a GAF of 41-50 indicates that the individual has "serious symptoms." Id. However, the DSM-5 abandoned the use of GAF scores as a diagnostic tool for assessing a patient's functioning because of the questionable probative value of such scores. Diagnostic and Statistical Manual of Mental Disorders (DSM-V) 16 (5th ed. 2013).

anxiety, but rated her GAF score at 50, indicating serious/borderline moderate psychological symptoms. (R. 474).

Records from the Durham VA Medical Clinic ("VAMC") show that Cochran received outpatient treatment for sleep apnea, obesity, exercise/allergy induced asthma, anxiety, and depression. (R. 449). During an evaluation on September 18, 2009, Cochran had a positive screening for PTSD and was prescribed Zoloft for depression. (R. 449-50). On October 23, 2009, Cochran attended an initial session of individual psychotherapy where she complained of anxiety and difficulty sleeping. (R. 443). Clinical psychologist Sandra Zinn, Ph.D., diagnosed Cochran with MST and panic disorder. Id.

On June 7, 2010, Cochran underwent a fiberoptic flexible laryngoscopy and was advised that she needed to have her CPAP machine adjusted for proper use. (R. 292). By August 2010, Cochran reported slight progress with her depression but complained that her Zoloft medication was making her "woozy." (R. 405). On March 4, 2011, Cochran reported that her CPAP machine was helping with her sleep apnea but that breathing through her nasal passage was still difficult. (R. 354). Upon examination, it was determined that she had a deviated septum. (R. 355).

## B.    VA Disability Rating and Individual Unemployability Status

Before seeking DIB from the Social Security Administration, Cochran applied for and was awarded VA benefits for service-connected disabilities. In 2011, VA records show that Cochran had service-connected disabilities, including a thirty percent (30%) disability for anxiety disorder and ten percent (10%) for asthma. (R. 629). In 2012, her disability for anxiety was increased to seventy percent (70%), asthma remained at thirty percent (30%), and she was determined to have a thirty percent (30%) disability for allergic or vasomotor rhinitis. (R. 518).

4

Under the VA disability calculation rules, these disabilities combined for a partial ninety percent (90%) service-connected disability rating.[3] Id.

On February 25, 2013, Cochran was also awarded "Individual Unemployability" status, which resulted in her benefits being paid at a rate of one hundred percent (100%) disability by the VA. On May 20, 2013, she applied for retroactive Individual Unemployability and an increase in her individual disability ratings. (R. 134). On June 26, 2014, the VA issued a decision awarding Cochran retroactive Individual Unemployability effective January 24, 2012. Id. The decision to grant retroactive benefits was based, in part, on an examination that occurred on October 25, 2012.[4] (R. 135-36). This determination also stated, incorrectly, that Cochran had "not completed any additional training or education since leaving the military in 2006."[5] Id. In that 2014 decision, the VA concluded that although Cochran's doctors found that she was "cognitively capable of completing work," a preponderance of the evidence shows she would be unable to "obtain and maintain substantially gainful employment due to the full spectrum of [her] mental health conditions." Id. The individual disability ratings for each of her impairments remained unchanged. (R. 136-38).

### III.   STANDARD OF REVIEW

In reviewing a decision of the Commissioner denying benefits, the court is limited to determining whether the decision was supported by substantial evidence on the record and whether the proper legal standard was applied in evaluating the evidence. 42 U.S.C. § 405(g);

---

[3] VA ratings for individual impairments are not added together for a total disability rating, but are combined using VA rating tables. See Compensation, U.S. Department of Veterans Affairs, http://www.benefits.va.gov/compensation/rates-index.asp.
[4] The VA determination states that a VA examination performed by QTC Medical services occurred on October 25, 2012. (R. 136). However, the only medical treatment notes in the record during that time period are from a psychological exam at the Hampton VA Medical Center on October 15, 2012. (R. 597).
[5] The VA did state that Cochran had "completed four years of post high school education." (R. 135). But it is unclear whether this referred only to her community college coursework, or if it included her completed undergraduate degree that she obtained in 2010.

5

Mastro v. Apfel, 270 F.3d 171, 176 (4th Cir. 2001); Hays v. Sullivan, 907 F.2d 1453, 1456 (4th

Cir. 1990). Substantial evidence is "such relevant evidence as a reasonable mind might accept as

adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971) (quoting

Consol. Edison Co. of New York v. NLRB, 305 U.S. 197, 229 (1938)). It consists of "more than

a mere scintilla" of evidence, but may be somewhat less than a preponderance. Laws v.

Celebrezze, 368 F.2d 640, 642 (4th Cir. 1966).

The court does not undertake to re-weigh conflicting evidence, make credibility

determinations, or substitute its judgment for that of the Commissioner. Craig v. Chater, 76 F.3d

585, 589 (4th Cir. 1996); Hays, 907 F.2d at 1456. "Where conflicting evidence allows

reasonable minds to differ as to whether a claimant is disabled, the responsibility for that

decision falls on the [Commissioner] (or the [Commissioner's] designate, the ALJ)." Craig, 76

F.3d at 589. The Commissioner's findings as to any fact, if supported by substantial evidence,

are conclusive and must be affirmed. Perales, 402 U.S. at 390. Thus, reversing the denial of

benefits is appropriate only if either the ALJ's determination is not supported by substantial

evidence on the record, or the ALJ made an error of law. Coffman v. Bowen, 829 F.2d 514, 517

(4th Cir. 1987).

## IV.    ANALYSIS

To qualify for disability insurance benefits under sections 416(i) and 423 of the Social

Security Act, 42 U.S.C. §§ 416(i) and 423, an individual must meet the insured status

requirements of these sections, be under age sixty-five, file an application for disability insurance

benefits, and be under a "disability" as defined in the Act. The Social Security Regulations

define "disability as the inability to do any substantial gainful activity by reason of any medically

determinable physical or mental impairment which can be expected to result in death or which

has lasted or can be expected to last for a continuous period of not less than 12 months." 20 C.F.R. § 404.1505(a); see also 42 U.S.C. §§ 416(i)(1)(A), 423(d)(1)(A). To meet this definition, a claimant must have a "severe impairment" that makes it impossible to do previous work or any other substantial gainful activity that exists in the national economy. 20 C.F.R. § 404.1505(a); see 42 U.S.C. § 423(d)(2)(A).

The regulations promulgated by the Social Security Administration provide that all material facts will be considered in determining whether a claimant has a disability. The Commissioner follows a five-step sequential analysis to ascertain whether the claimant is disabled. The five questions which the ALJ must answer are:

1. Is the individual involved in substantial gainful activity?

2. Does the individual suffer from a severe impairment or combination of impairments which significantly limit his or her physical or mental ability to do the work activities?

3. Does the individual suffer from an impairment or impairments which meet or equal those listed in 20 C.F.R., Pt. 404, Subpt. P, App. 1 (a "listed impairment" or Appendix 1")?

4. Does the individual's impairment or impairments prevent him or her from performing his or her past relevant work?

5. Does the individual's impairment or impairments prevent him or her from doing any other work?

20 C.F.R. § 1520(a)(4).

An affirmative answer to question one, or a negative answer to question two or four, results in a determination of no disability. An affirmative answer to question three or five establishes disability. See id. §§ 404.1520, 416.920. The burden of proof and production rests on the claimant during the first four steps, but shifts to the Commissioner on the fifth step. Pass v. Chater, 65 F.3d 1200, 1203 (4th Cir. 1995) (citing Hunter v. Sullivan, 993 F.2d 31, 35 (4th

Cir. 1992)).

When conducting this five-step analysis, the ALJ must consider: (1) the objective medical facts; (2) the diagnoses and expert medical opinions of the treating and examining physicians; (3) the subjective evidence of pain and disability; and (4) the claimant's educational background, work history, and present age. Hayes v. Gardner, 376 F.2d 517, 520 (4th Cir. 1967) (citing Underwood v. Ribicoff, 298 F.2d 850, 851 (4th Cir. 1962)). At all steps the ALJ bears the ultimate responsibility for weighing the evidence. Hays, 907 F.2d at 1456.

## A.     The ALJ's Decision

As a result of his five-step analysis, the ALJ concluded that Cochran met the insured status requirements, but had not been under a disability within the meaning of the Social Security Act between her alleged onset date, February 16, 2006, and her date last insured, June 30, 2011. (R. 20-27).

At step one, the ALJ found that Cochran had not engaged in substantial gainful activity since her alleged onset date, February 16, 2006. (R. 20). At step two, the ALJ found that Cochran suffered from the following severe impairments: anxiety, asthma by history, sleep apnea, and obesity. Id. At step three, the ALJ found that Cochran did not suffer from a listed impairment (R. 21), and at step four, found that Cochran was unable to perform any of her past relevant work (R. 26). In drawing his step four conclusion, the ALJ determined that Cochran had a residual function capacity ("RFC") "to perform light work . . . except that she could not tolerate exposure to excessive amounts of dust, smoke, or other air pollutants and she was restricted to simple, repetitive, job tasks without frequent interaction with the general public." (R. 22). At step five, the ALJ concluded that jobs which Cochran could perform exist in significant numbers in the national economy. (R. 26).

In making his RFC determination and finding of no disability, the ALJ considered and gave "substantial weight" to the VA's disability ratings assigned to Cochran's impairments. Specifically, the ALJ stated that "[t]he impairments described in the VA records have been duly considered and the appropriate limitations related to the impairments have been incorporated into the residual function capacity described above, as I give substantial weight to the Department of Veterans Affairs Rating Decision, in accordance with Bird." (R. 26). The ALJ did recognize that Cochran was being paid at the one hundred percent (100%) disability rate due to her Individual Unemployability status, but did not address that classification further. Id.

**B.    The ALJ Was Not Required to defer to the VA's Award of Individual Unemployability, and the Conclusion that Cochran was Not Disabled under SSA Rules was supported by Substantial Evidence**

Cochran urges this court to vacate and remand the Commissioner's decision for the sole reason that the ALJ gave "substantial weight" to her VA disability ratings, and therefore should have found that she was disabled because the VA had awarded her Individual Unemployability status. See Pl.'s Br. Supp. Mot. Summ. J. at 4 (ECF No. 9). Importantly, Cochran does not argue that the ALJ improperly considered or afforded the incorrect weight to the individual disability ratings (i.e., seventy percent (70%) for anxiety and depression, and thirty percent (30%) for asthma) in reaching his determination. Cochran's only argument is that Bird v. Commissioner, 699 F.3d 337 (4th Cir. 2012), requires an ALJ to give "substantial weight" to the VA's award of Individual Unemployability, which – according to Cochran – necessarily requires a finding of disability by the Social Security Administration, unless the ALJ articulates why the outcome for Social Security benefits is different. However, because Cochran's award of Individual Unemployability is only effective as of January 24, 2012 – a date after her DLI – and because it was based on disability ratings which were fully considered and correctly addressed in

Cochran's RFC, the opinion fairly considered the VA ratings in reaching the conclusion that Cochran was not disabled on or before June 30, 2011. Accordingly, the ALJ did not err by finding Cochran was not disabled under the Social Security Act, despite granting substantial weight to the VA's rating decision.

As an initial matter, "Individual Unemployability" is a determination made by the VA after a veteran is found to be "unable to secure or follow a substantially gainful occupation as a result of service-connected disabilities." 38 C.F.R. § 4.16(a).[6] Such a finding allows the veteran to receive 100 percent disability compensation when their impairment (or combination of impairments) does not equal a 100 percent disability rating under the VA's rating guidelines. Id. In other words, a VA finding that a veteran is entitled to 100 percent disability benefits because of unemployability differs from a 100 percent disability rating based on the VA's schedule for rating disabilities. Compare 38 C.F.R. § 4.16, with 38 C.F.R. § 4.25. With respect to judicial review of SSA disability determinations, courts have sometimes treated a finding of Individual Unemployability as synonymous with a VA disability rating. See, e.g., Harris v. Colvin, 2016 WL 3535814, No. 1:15-3710 (D.S.C. June 9, 2016) (slip copy); Ferdinand v. Astrue, 2013 WL 1333540, 4:12cv80 (E.D. Va. Feb. 28, 2013); but see Barraza v. Barnhart, No. 02-10765, 61 Fed. Appx. 917, 2003 WL 1098841, at *1 (5th Cir. Feb. 11, 2003) (unpublished) ("To the extent that Plaintiff's VA benefit payment rate was based on vocational, rather than medical, factors, it was a non-medical opinion which is not entitled to the deference due a medical determination of disability."). Assuming, without deciding, that Cochran's Individual Unemployability determination is synonymous with a disability rating, the evidentiary value it must be afforded is

---

[6] In addition to being unable to obtain or maintain employment, the veteran must also have at least one disability ratable at sixty percent (60%) or more, or a combination of one disability ratable at forty percent (40%) and others bringing the total combined rating to seventy percent (70%) or more. See 38 C.F.R. § 4.16(a).

controlled by <u>Bird</u>.

In <u>Bird</u>, the Fourth Circuit held that "in making a disability determination, the SSA must give <u>substantial weight</u> to a VA disability rating" because "both the VA and Social Security programs serve the same governmental purpose of providing benefits to persons unable to work because of a serious disability," and "[b]oth programs evaluate a claimant's ability to perform full-time work in the national economy on a sustained and continuing basis." 699 F.3d at 343-44 (emphasis added). If an ALJ fails to give substantial weight to a VA disability rating without articulating why, remand is typically required. <u>See id.</u>

But another of <u>Bird</u>'s holdings reaffirmed the circumstances under which an ALJ must consider post-DLI evidence. In <u>Bird</u>, as in this case, the claimant suffered from mental limitations which apparently worsened after his DLI. The ALJ had declined to consider certain psychological evaluations because they occurred after Bird's DLI. In remanding the case, the Fourth Circuit noted that post-DLI evidence should be considered by the ALJ when it is relevant to prove disability arising before the claimant's DLI. <u>Id.</u> at 340-41. Where there is no evidence that the alleged disability existed before the claimant's DLI, the ALJ is not required to give the post-DLI assessment retrospective consideration. <u>See id.</u> (citing <u>Johnson v. Barnhart</u>, 434 F.3d 650 (4th Cir. 2005); <u>see also</u> <u>Brown v. Astrue</u>, No. 8:11-03151, 2013 WL 625599, at *15 (D.S.C. Jan. 31, 2013), <u>adopting report and recommendation</u>, 2013 WL 625581 (D.S.C. Feb. 20, 2013) ("[A]lthough medical opinions from after the date last insured may sometimes be probative to a disability determination, these medical opinions must relate back to the relevant period and offer a retrospective opinion on the past extent of an impairment.").

In this case, the ALJ was not required to adopt or distinguish the VA's Individual Unemployability determination for two reasons. First, the VA's finding of unemployability did

not modify its earlier conclusion regarding Cochran's individual disability ratings; and second, it was only effective as of a date (January 24, 2012) after Cochran's DLI of June 30, 2011. In other words, the VA determination of "unemployability" did not relate back to any period of time before Cochran's DLI and therefore, the ALJ was not required to defer to it. See Bird, 699 F.3d 340-41. Again, the VA's decision to retroactively consider Cochran unemployable as of January 24, 2012, was made after reviewing medical records, including a psychological exam that occurred on October 25, 2012, and medical records dating back as far as February 2011 – records that would have been from the period Cochran was eligible for DIB. (R. 135-36). Importantly, the VA's decision indicates that Cochran's physicians did not believe her disabilities prevented her from working, but that a totality of the circumstances made her – in the VA examiner's opinion – unemployable. See (R. 135-36). But, the VA decision that Cochran was "unemployable" as of January 24, 2012, did not mandate that the ALJ also conclude she was disabled within the meaning of the Social Security Act between February 16, 2006 and June 30, 2011.

Cochran's reliance on Jackson v. Colvin, No. 2:14-cv-14508, 2015 WL 3466307 *1 (S.D. W. Va. May 4, 2015), only strengthens this conclusion. In that case, the claimant had both individual disability ratings and an Individual Unemployability determination from the VA. Jackson, 2015 WL 3466307, at *3-4. However, unlike this case, the VA determined the claimant in Jackson was unemployable before his DLI. Id. Thus, the ALJ was required to consider the Individual Unemployability determination in that case because it was a disability determination made by another agency concerning the same period of alleged disability. In addition, unlike this case, the ALJ in Jackson afforded minimal weight to the VA's findings and the case was remanded because the reviewing court found the ALJ's explanation for the departure from

substantial weight inadequate. Id. at *14-16.

Here, the ALJ gave substantial weight to Cochran's individual VA disability ratings and imposed limitations in her RFC to accommodate those impairments.  For example, the ALJ's RFC limited her exposure to "excessive amounts of dust, smoke, or other air pollutants" to accommodate her asthma and restricted her to "simple, repetitive, job tasks without frequent interaction with the general public" in light of her anxiety and depression. See (R. 22).  Those limitations were well founded, as the medical records in this case do show that Cochran has struggled with anxiety, depression, and asthma for many years.  The ALJ's detailed examination of Cochran's medical records confirms that his decision was supported by substantial evidence. That is, the ALJ analyzed Cochran's medical records to determine whether the alleged severity of Cochran's impairments was supported by the record.

In addition, the ALJ observed that during her alleged period of disability between 2006 and 2011, Cochran had three children and completed her Bachelor's Degree from East Carolina University ("ECU").  (R. 25, 213-16).  Cochran testified that her husband did most of the housework, that she had trouble concentrating on television, and could not watch movies.  (R. 49-50).  But her academic transcripts revealed that during this same time she enrolled in three to four courses each semester, earned mostly A's and B's, and finished her Bachelor's Degree with a cumulative GPA of 3.52.  (R. 215).  During her last semester at ECU in Spring 2010, she took four courses, including Legal Environment of Business, and earned a perfect 4.0 average. Id.

Not surprisingly, given this evidence, Cochran does not argue the ALJ's RFC is unsupported by the evidence.  Instead, she claims that, pursuant to Bird, the VA's post-DLI award of Individual Unemployability required a finding that she was disabled under the Social Security Act.  However, as discussed above, the VA's finding that Cochran was "unemployable"

considered vocational characteristics in addition to her physical and mental impairments. More importantly, it was made after her DLI. Because the VA considered evidence from 2011, but limited its retroactive unemployability finding to 2012, its determination in 2014 does not "permit[] an inference of linkage with the claimants pre-DLI condition." Bird, 699 F.3d at 341. Accordingly, the ALJ complied with Bird by giving substantial weight to the VA's relevant rating decisions and accommodating Cochran's impairments in her RFC. He was not required to defer to the VA's Individual Unemployability determination, and substantial evidence in the record and cited by the ALJ supported his decision.

## V.     **RECOMMENDATION**

For the foregoing reasons, the undersigned recommends that the court DENY Cochran's Motion for Summary Judgment (ECF No. 8), GRANT the Commissioner's Motion for Summary Judgment (ECF No. 10), and AFFIRM the final decision of the Commissioner.

## VI.     **REVIEW PROCEDURE**

By copy of this Report and Recommendation, the parties are notified that pursuant to 28 U.S.C. § 636(b)(1)(C):

1.     Any party may serve upon the other party and file with the Clerk written objections to the foregoing findings and recommendations within fourteen (14) days from the date of mailing of this Report to the objecting party, 28 U.S.C. § 636(b)(1)(C), computed pursuant to Rule 6(a) of the Federal Rules of Civil Procedure. A party may respond to another party's objections within fourteen (14) days after being served with a copy thereof.

2.     A district judge shall make a de novo determination of those portions of this report or specified findings or recommendations to which objection is made.

14

The parties are further notified that failure to file timely objections to the findings and recommendations set forth above will result in waiver of right to appeal from a judgment of this Court based on such findings and recommendations. Thomas v. Arn, 474 U.S. 140 (1985); Carr v. Hutto, 737 F.2d 433 (4th Cir. 1984); United States v. Schronce, 727 F.2d 91 (4th Cir. 1984).


                                         /s/
                              Douglas E. Miller
                              United States Magistrate Judge

                         DOUGLAS E. MILLER
                         UNITED STATES MAGISTRATE JUDGE


Norfolk, Virginia
December 27, 2016